UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:20-CV-00083-HBB

**DEWAYNE REYNOLDS**                                                                                  **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                                  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Dewayne Reynolds ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 20) and Defendant (DN 26) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 16). By Order entered December 7, 2020 (DN 17), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

1

FINDINGS OF FACT

On March 20, 2017, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 10, 155-57, 158-66). Plaintiff alleged that he became disabled on April 16, 2016, as a result of degenerative disease of the spine (Tr. 10, 63, 76, 184). Following denial of the application at the initial level in April 2017 and the reconsideration level in June 2017, Plaintiff filed a written request for a hearing in June 2017 (Tr. 10, 63-73, 75-87, 103-04). Administrative Law Judge Maribeth McMahon ("ALJ") conducted a video hearing from Paducah, Kentucky (Tr. 10, 34, 36). Plaintiff and his counsel, Sara J. Martin Diaz, participated from Owensboro, Kentucky (Id.). Stephanie G. Barnes, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated April 3, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 10-23). The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021 (Tr. 12). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 16, 2016, the alleged onset date (Id.). At the second step, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease and obesity (Tr. 13). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.). Further, the ALJ specifically found that Plaintiff's degenerative disc disease did not meet or medically equal Listing 1.04, because there is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudo claudication (Id.).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work because he can sit, stand, and walk each up to thirty minutes at a time, for a total of six hours each in an eight-hour day; he can occasionally climb ladders, ropes, or scaffolds and stoop; he can frequently climb ramps and stairs, kneel, crouch, and crawl; and he should avoid concentrated exposure to vibrations (Id.). Additionally, the ALJ relied on testimony from the vocational expert to find that Plaintiff is unable to perform any of his past relevant work (Tr. 21).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 22-23). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from April 16, 2016, through the date of the decision, April 3, 2019 (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 153-54). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when

a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. § 404.1520. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Finding No. 5 Part 1

1. Arguments of the Parties

Dr. Benjamin Burkett, the treating orthopedic surgeon, articulated Plaintiff's functional limitations in a May 2017 medical opinion (DN 20-1 PageID # 1468). Plaintiff does not challenge the ALJ's assignment of "great weight" to Dr. Burkett's opinion that Plaintiff could sit, stand, and walk up to thirty minutes at a time (Id.). What Plaintiff contests is the ALJ giving "little weight"

5

to the rest of Dr. Burkett's opinion (Id. at PageID # 1468-69). Plaintiff asserts that the ALJ did not articulate "good reasons" for the assignment of "little weight" because the ALJ failed to discuss or reference the following factors : (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors (Id. at PageID # 1469-70, citing 20 CFR 404.1527(c)). Instead, the ALJ found the rest of Dr. Burkett opinion inconsistent with: (1)"generally normal" physical findings that were cherrypicked from the record and irrelevant to the aspects of Dr. Burkett's opinion that the ALJ sought to discredit; (2) physical therapy records discussing Plaintiff's ability to get his lumbar range of motion within functional limits as well as his ability tolerate physical therapy, climb stairs, and walk and stand for fifteen minutes with no increase of pain; and (3) speculative inferences about Plaintiff's activities of daily living (Id. at 1470-82).

Defendant asserts that the ALJ properly evaluated the opinion of Dr. Burkett and provided "good reasons" for the weight assigned to each of the limitations expressed therein (DN 26 PageID # 1509-15). Defendant points out that while "the regulations indicate that an ALJ should consider the regulatory factors in 20 C.F.R. § 404.1527(c)(2)-(6), they do not require an ALJ to provide an 'exhaustive, step-by-step analysis of each factor'" (Id. at PageID #1509, quoting Biestek v. Comm'r of Soc. Sec., 880 F.3d 778, 785 (6th Cir. 2017)). Instead, the regulations provide that an ALJ "will consider all of the factors and 'give good reasons in our . . . decision for the weight we give your treating source's medical opinion'" (Id. quoting 20 C.F.R. § 404.1527(c)(2)) (ellipsis in original). Defendant contends that the ALJ reasonably gave great weight to Dr. Burkett's opinion—Plaintiff has the ability to sit for forty-five minutes at a time, stand for thirty minutes at a time, and walk every thirty minutes—because it is consistent with the medical evidence of record

and Plaintiff's hearing testimony (Id. at PageID # 1510, citing Tr. 20; 20 C.F.R. § 404.1527(c)(4)). Defendant asserts that the ALJ reasonably gave little weight to the rest of Dr. Burkett's opinion because it was inconsistent with the record as a whole, including Dr. Burkett's own treatment notes (Id. citing Tr. 20; 20 C.F.R. § 404.1527(c)(3)-(4)). Defendant points out there are numerous objective findings on examination that support the ALJ's finding that the record did not support Dr. Burkett's opinion that Plaintiff needed an assistive device; could occasionally lift up to ten pounds; could rarely lift up to twenty pounds; could never stoop, crouch, or climb stairs; and he would miss about two days of work each month (Id. at PageID # 1510-12). Further, the ALJ properly considered Plaintiff's reported activities and the opinion from Dr. Black, a non-examining state agency physician, when evaluating Dr. Burkett's opinion and formulating the RFC (Id. at PageID # 1512-15).

    2. Discussion

Finding No. 5 sets forth the RFC finding which is the ALJ's ultimate determination of what Plaintiff can still do despite his physical limitations (Tr. 13-21). 20 C.F.R. §§ 404.1545(a), 404.1546(c); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC). The RFC finding is based on a consideration of medical opinions and all other evidence in the case record, including a claimant's subjective statements about his impairments. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Medical opinions expressing functional limitations imposed by a claimant's physical or mental impairments can be generated by treating physicians or psychologists, consultative examining physicians or psychologists, state agency physicians or psychologists who reviewed the claimant's medical records, or medical experts who testify at

hearings before an Administrative Law Judge. 20 C.F.R. §§ 404.1502, 404.1513(a)(2), 404.1513a(b), 404.1527, 404.1545(a)(3). Thus, in making the RFC finding an Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527(c), 404.1529(a).

As Plaintiff filed his application for Disability Insurance Benefits prior to March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply to the ALJ's assignment of weight to the medical opinions in the record. The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. § 404.1527(c). If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source. 20 C.F.R. § 404.1527(c).

In May 2017, Plaintiff's treating physician, Dr. Burkett, filed out a "PHYSICAL RESIDUAL FUNCTIONAL CAPACITY QUESTIONNAIRE" form (Tr. 471-75). Dr. Burkett indicated a diagnosis of lumbar degenerative disc disease with a "Reserved" prognosis (Tr. 471). Dr. Burkett opined that Plaintiff could walk two city blocks, sit for 45 minutes at one time, and stand for 30 minutes at one time (Tr. 472). He indicated that in an eight-hour working day Plaintiff can sit for at least six hours but must get up every 30 minutes and walk for seven minutes and she will need to take unscheduled ten-minute breaks every hour (Tr. 473). Dr. Burkett opined that Plaintiff can frequently lift and carry less than ten pounds, occasionally lift and carry ten pounds, and rarely lift and carry 20 pounds (Id.). He posited that Plaintiff can occasionally twist, rarely climb stairs, but can never stoop, crouch/squat; and climb ladders (Tr. 474). Dr. Burkett

8

opined that Plaintiff would be absent from work about two days per month as a result of the impairments or treatment (Id.).

In June 2017, Dr. Burkett indicated that Plaintiff underwent a lumbar fusion at L3-4 and L4-5 on February 9, 2017 (Tr. 1269). Additionally, he opined "[n]o heavy lifting" (Id.).

The relevant parts of the ALJ's decision read as follows:

> The undersigned gives some weight to the May 2017 opinion from Benjamin Burkett, M.D., the claimant's treating orthopedic surgeon. Ex. 8F. Dr. Burkett opined that the claimant can sit for forty-five minutes at one time, stand for thirty minutes at one time, and that the claimant will be required to walk every thirty minutes. This opinion receives great weight, as it is consistent with the medical evidence of record, including the claimant's hearing testimony. At follow-up appointments, the claimant reported some continued back pain. He also testified that he cannot sit or stand for long periods and that he needs to get up every thirty minutes to walk around. Therefore, the undersigned also finds that the claimant can sit, stand, and walk each up to thirty minutes at a time, for a total of six hours each in an eight-hour day. Dr. Burkett also opined that the claimant must use an assistive device, can frequently lift up to ten pounds, occasionally lift up to ten pounds, and rarely lift up to twenty pounds, and never stop, crouch, or climb ladders. He also opined that the claimant could occasionally twist and rarely climb stairs. In addition, Dr. Burkett opined that the claimant would miss about two days of work per month. This opinion receives little weight because it is inconsistent with the record as a whole, including Dr. Burkett's own treatment notes. Despite the claimant's reports of continued pain and minimal relief from physical therapy and injections, he had generally normal physical examination findings. The claimant had a normal gait with no reports of any assistive device used except immediately following his February 2017 surgery. Additionally, he had intact sensation, normal reflexes, and negative straight leg raise tests bilaterally. With physical therapy, the claimant's lumbar range of motion was within functional limits and he could tolerate a session, climb stairs, and walk and stand for fifteen minutes with no increase of pain. Additionally, the claimant testified that he completes many activities of daily living with breaks. The record as a whole does not support Dr. Burkett's significant limitations. Therefore, the undersigned limited the

9

> claimant to occasionally climbing ladders, ropes, or scaffolds and stooping. The claimant can frequently climb ramps and stairs, kneel, crouch, and crawl. Finally, he should avoid concentrated exposure to vibrations.
>
> . . .
>
> The [undersigned] also gives little weight to the June 2017 opinion from Benjamin Burkett, M.D., the claimant's treating orthopedic surgeon. Ex. 13F/501. Dr. Burkett opined that the claimant cannot perform any heavy lifting. While the undersigned limited the claimant to less than the full range of light work, Dr. Burkett's opinion is vague and does not provide any specific weight or work related limitations for the claimant.

(Tr. 20-21).

The ALJ did not expressly address whether Dr. Burkett's opinion is entitled to controlling weight. However, the ALJ's analysis implicitly indicates the medical opinion was not accorded controlling weight because it is inconsistent with other substantial evidence in the record. The ALJ's analysis indicates she weighed the opinion based on the treatment relationship, specialization, supportability, consistency, and other factors that tend to support and contradict the medical opinion. *See* 20 C.F.R. § 1527(c)(2)-(6). Thus, contrary to Plaintiff's assertion, the ALJ did consider the factors in paragraphs (c)(1)-(6) of 20 C.F.R. § 404.1527(c) in deciding how much weight to accord Dr. Burkett's medical opinions. *See* Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). Moreover, the ALJ provided good reasons for the weight assigned to the identified parts of Dr. Burkett's opinions. The ALJ's findings are supported by substantial evidence in the record and comport with applicable law. Therefore, Plaintiff's challenge to the ALJ's assignment of weight the Dr. Burkett's opinions is unsuccessful.

Finding No. 5 Parts 2 and 3

1. Arguments of the Parties

Plaintiff argues the ALJ did not provide a sufficient reason for not accepting Plaintiff's testimony—regarding the intensity, persistence, and limiting effects of his severe degenerative disc disease—as consistent with the medical records (DN 20-1 PageID # 1482-87, citing Tr. 48-52). Plaintiff accuses the ALJ of overlooking or ignoring portions of the record that are consistent with his testimony, while cherry picking portions of the record supporting the ALJ's finding (Id.). Plaintiff contends that the record shows despite three back surgeries, he has consistently and rigorously treated the symptoms and persistent pain by seeing specialists and physical therapists, receiving epidural injections, and taking pain medication (Id.). Plaintiff faults the ALJ for relying on an August 2017 post-surgical MRI without contrast when there was a pre-surgical August 2016 MRI done with contrast that demonstrated much more severe findings that are not all explained away by the February 2017 lumbar fusion at L3-4 and L4-5 (Id.). Specifically, the August 2016 MRI showed asymmetric disc bulging/protrusion at L5-S1 that could be irritating the left S1 nerve root in the lateral recess and moderate bilateral foraminal stenoses that could be a source of an L5 radiculopathy (Id. at PageID # 1485, citing Tr. 283). It also showed mild to moderate diffuse disc bulging at L1-2 (Id.). Plaintiff asserts the greater clarity of the 2016 MRI with contrast is the only plausible explanation for the non-contrast 2017 MRI failing to indicate significant findings at L5-S1 and L1-2 (Id.). Plaintiff also faults the ALJ for considering factors such as his not having a fourth back surgery and not visiting the emergency room for back pain (Id. citing SSR 16-3p).

Additionally, Plaintiff contends that the ALJ did not rely on substantial evidence in concluding that he had the RFC to perform less than the full range of light work (Id. PageID # 1487-90). Plaintiff argues "clear error" by the ALJ because there is "absolutely no indication anywhere in the record that Mr. Reynolds retained the ability to perform light work which requires frequent lifting or carrying of objects weighing up to ten (10) pounds (Id.).

Defendant contends the ALJ gave a detailed discussion of the evidence as it related to Plaintiff's subjective statements and provided adequate reasons for finding that they were not consistent with the evidence (DN 26 PageID # 1518-20, citing Tr. 13-21). Further, the ALJ assessment comported with applicable law (Id. at PageID # 1518, citing 20 C.F.R. § 404.1529; SSR 16-3). Defendant points out that the ALJ considered all of the evidence, not just the August 2017 lumbar MRI, and built a bridge from the evidence to the conclusion (Id. at PageID # 1519-20). Further, the opinion from Dr. Back, state agency medical consultant, supports the ALJ's assessment of Plaintiff's subjective complaints and RFC determination (Id. at PageID # 1520). Additionally, Defendant asserts that substantial evidence in the record supports the ALJ's determination that Plaintiff could perform a limited range of light work (Id. at PageID # 1515-18).

   2. Discussion

In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings. 20 C.F.R. § 404.1529; Social Security Ruling 16-3p. A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. § 404.1529(a). In

determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies. First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id. When the reported pain and other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. § 404.1529(c)(3). Other factors include a claimant's level of daily activity, 20 C.F.R. § 404.1529(c)(3)(i); the frequency that treatment is sought for the allegedly disabling condition, 20 C.F.R. § 404.1529(c)(3)(v); inconsistencies in the evidence and the extent to which there are any conflicts between the claimant's statements and the rest of the evidence, 20 C.F.R. § 404.1529(c)(4); and the medication used to alleviate the alleged pain or other symptoms, 20 C.F.R. § 404.1529(c)(3)(iv).

Here, the ALJ provided a thorough and accurate summary of Plaintiff's subjective statements regarding his pain and other symptoms caused by his back condition, his level of daily activity, the medication used to address his symptoms, the frequency that he sought treatment, and the extent to which there are conflicts between his statements and the rest of the evidence (Tr. 14-20). The ALJ also thoroughly and accurately summarized the surgical and non-surgical treatment that Plaintiff received for his back condition as well as the physical examination findings

and the results of MRIs and x-rays of his Plaintiff's spine (Id.). In relevant part the ALJ's decision reads as follows:

> Treatment for the claimant's degenerative disc disease has been effective. The claimant underwent a left microdiscectomy at L4-5 in May 2016. Although the claimant required a second lumbar surgery in February 2017, his condition generally improved after this lumbar fusion procedure. Exs. lF/8, SF/3-4. After his February 2017 procedure, the claimant attended extensive physical therapy. Exs. l0F, 13F. The claimant's condition improved with physical therapy, as his lumbar range of motion was within function limits, he had an independent gait, and he had a negative straight leg raise test bilaterally. Ex. 13F/284. In addition, the claimant could tolerate full treatment sessions, stand and walk for fifteen minutes, and ambulate ten stairs without an increase of pain. Ex. 13F/543. Although the claimant reported continued back and hip pain with only minimal relief from a series of epidural steroid injections, he had generally normal physical examination findings including a normal gait with no use of an assistive device, normal reflexes, intact sensation and cranial nerves, and bilaterally negative straight leg raise tests. Exs. 12F/4-18, 14F/4, 6-7, 9. Additionally, a post-surgical MRI of the claimant's lumbar spine performed in August 2017 was generally normal with only mild findings. Ex. 12F/12-13. He testified that he takes pain medication only as needed. While this medication does not completely take his pain away, he testified that it does provide some symptom relief. Furthermore, there is no evidence that the claimant has undergone any additional invasive treatments since his February 2017 lumbar fusion. In fact, there is no evidence that the claimant has ever reported to the emergency department for his lumbar back pain. However, to avoid exacerbating the claimant's symptoms from his degenerative disc disease, the undersigned has limited him to less than the full range of light work. He can sit, stand, and walk each up to thirty minutes at a time, for a total of six hours each in an eight-hour day. Additionally, the claimant can occasionally climb ladders, ropes, or scaffolds and stoop. The claimant can frequently climb ramps and stairs, kneel, crouch, and crawl. Finally, he should avoid concentrated exposure to vibrations.
>
> Pursuant to Social Security Ruling 02-1p, the undersigned must do an individualized assessment of the impact of obesity on the claimant's functioning to determine whether it is severe.

SSR 02-lp. . . . In this case, the undersigned finds that the claimant's obesity is severe because it causes greater pain and functional limitations than would be expected from his severe impairments alone. Because of the claimant's obesity, and its effects on the claimant's other severe impairments, the undersigned has limited the claimant to light work with the additional restrictions of sitting, standing, and walking each up to thirty minutes at a time, for a total of six hours each in an eight- hour day. Additionally, the claimant can occasionally climb ladders, ropes, or scaffolds and stoop. The claimant can frequently climb ramps and stairs, kneel, crouch, and crawl. Finally, he should avoid concentrated exposure to vibrations.

Overall, the medical evidence of record does not support the claimant's alleged symptoms or alleged loss of functioning. While the claimant reported continued pain after his May 2016 and February 2017 lumbar procedures, he had generally normal objective imaging and physical examination findings. A post-operative lumbar MRI performed in August 2017 was generally normal with only mild findings. The claimant reported that physical therapy provided no significant improvement, but his lumbar spine improved to a functional range of motion, he had negative straight leg raise tests bilaterally, and he could tolerate an entire session, climb ten stairs, and stand and walk for fifteen minutes without an increase of pain. The claimant reported continued pain at orthopedic follow-up appointments, but he had a negative straight leg raise test bilaterally, a normal gait, and intact sensation. The claimant also had generally normal examination findings with his primary care provider in 2017 and 2018 including a normal gait, intact cranial nerves, and intact sensation. The claimant even reported being able to exercise at one of these appointments. There is no evidence that the claimant has received any additional invasive treatment for his degenerative disc disease. Instead, the claimant testified that he takes pain medication only when needed. While it does not provide complete relief, he testified that he does get some symptom relief with his medication.

Despite [his] alleged symptoms, the claimant completes many activities of daily living. As long as he takes breaks, the claimant testified that he is able to handle his own personal care, prepare meals, and do some household chores like washing dishes and laundry. The claimant also testified that he attends church. While he testified that he debated quitting Sunday school, he has been able

> to continue going. He also testified that he is able to do his home exercise plan in the pool. The claimant also reported that he is able to do short shopping trips. Ex. 7E.

(Tr. 18-20).

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain to the extent he testified. In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to assess the claimant's subjective allegations and make appropriate findings. The undersigned concludes that the ALJ's assessment of Plaintiff's subjective allegations are supported by substantial evidence and fully comport with applicable law, including the regulations for evaluating consultative and treating physician's opinions and pain. *See* 20 C.F.R. §§ 404.1519a-p, 404.1527, 404.1529.

In sum, contrary to Plaintiff's contentions, the ALJ's RFC determinations are supported by substantial evidence in the record and comport with applicable law. For this reason, Plaintiff's three challenges to the RFC determinations are unsuccessful.

## Finding Nos. 10 and 11

1. Arguments of the Parties

Plaintiff argues the Medical Vocational Rules would have directed a GRID Rule finding of disability if he been found capable of sedentary work (DN 20-1 PageID # 1490-91). Plaintiff accuses the ALJ of intentionally avoiding a favorable GRID Rule finding by determining he has the RFC to perform a range of light work (Id.).

Defendant asserts that Plaintiff failed to demonstrate that his claim should have been evaluated under the sedentary GRID Rules (DN 26 PageID # 1517-18).

2. Discussion

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the local, regional and national economies that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. § 404.1569; Grid Rule 200.00; Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon, 923 F.2d at 1181. However, if a claimant's age, education, previous work experience, and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Here, for the reasons set forth above, the ALJ's RFC finding is supported by substantial evidence in the record and comports with applicable law. The ALJ determined that Plaintiff has the RFC to perform a range of light work due to exertional, postural, and environmental limitations (Tr. 13, Finding No. 5). As Plaintiff suffers from an impairment that imposes exertional and non-

exertional limitations, the ALJ was limited to using the GRID Rules as a framework to provide guidance for decision making and was required to make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. § 404.1569a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Abbot v. Sullivan, 905 F.2d 918, 926-927 (6th Cir. 1990); Cole v. Sec'y of Health & Human Servs., 820 F.2d 768, 771 (6th Cir. 1987); Kirk, 667 F.2d at 528-529. This means the ALJ appropriately relied on the testimony of the vocational expert to make Finding Nos. 10 and 11. Both findings are supported by substantial evidence in the record and comport with applicable law. Thus, Plaintiff is not entitled to relief on this claim.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. (Id.). After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to his challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

May 26, 2021

H. Brent Brennenstuhl
United States Magistrate Judge

Copies: Counsel

19